AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT

2017 JUL 18 AM 10: 24

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
CERTAIN INFORMATION CONCERNING CALL )
NUMBER 937-266-6189 )
)

Case No. 3:17mj334

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Southern___ District of ___Ohio___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 846 | conspiracy to distribute controlled substances |
| 21 USC s. 841(a)(1) | possession with intent to distribute controlled substances |

The application is based on these facts:
See Attached Affidavit of Frederick Zollers

☑ Continued on the attached sheet.
☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Frederick Zollers, TFO of the FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: 7-18-17

_____
Judge's signature

City and state: Dayton, Ohio

Sharon L. Ovington, US Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **937-266-6189** AND INTERNATIONAL MOBILE SUBSCRIBER IDENTITY (IMSI) NUMBER 310410680907558 | Case No. **3:17 mj 334**<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Frederick D. Zollers, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **937-266-6189, ("Target Telephone")**, whose service provider is AT&T, a wireless telephone service provider headquartered at 208 S. Akard Street, Dallas, Texas 75202. The **Target Telephone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a sworn law enforcement officer in the State of Ohio and have been employed by the Montgomery County Ohio Sheriff's Office for the past ten years. I am currently a deputized TFO assigned to the FBI's Southern Ohio Safe Streets Task Force (SOSSTF), Dayton Resident Agency and have served in that capacity since November 2014. I am familiar with federal criminal laws including, but not limited to, federal drug trafficking and firearm offenses. I have been involved in narcotics related arrests; the execution of search warrants, which resulted in the seizure of narcotics; and supervised the activities of informants

1

who provided information and assistance resulting in drug buys. I have received training and experience in interviewing and interrogation techniques; arrest, search and seizure procedures; narcotics investigations; and various other criminal investigations resulting in successful prosecution. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies. In the course of conducting narcotics investigations, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting undercover operations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; conducting court-authorized wire and oral interception electronic surveillance; and preparing and executing search warrants which have led to substantial seizures of narcotics, firearms, contraband, and evidence of criminal activity.

3. I have repeatedly encountered a practice wherein drug traffickers distribute a cellular telephone number to their drug customers, often described by traffickers as a "money phone." The money phone is used primarily to communicate with those customers. The customers will subsequently call or send a text message to the trafficker on that cellular telephone number to arrange a purchase of drugs as needed. The trafficker will many times field calls or text messages from several customers at once, and then direct all those customers to travel in their car to a designated meeting point. Once all the customers have driven to the designated place, the drug trafficker will appear in his vehicle, quickly conduct hand to hand drug transactions with each customer, and then drive away. I have also encountered the practice

of traffickers fielding calls from drug customers and directing those customers to "drug houses" which are used to store, package, and sell narcotics.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C. §§ 841 (distribution of a controlled substance) and 843 (use of a communications facility to commit a felony) have been committed, are being committed, and will be committed by Bryan Allen Moore Jr. a/k/a "Chip" utilizing **Target Telephone 937-266-6189**. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

6. In May 2017 members of the FBI's Southern Ohio Safe Streets Task Force (SOSSTF) and members of the Regional Agencies Narcotics and Gun Enforcement Task Force (RANGETF) began investigating Bryan Allen Moore Jr. (hereinafter referred to as MOORE) after receiving information that MOORE was trafficking large quantities of methamphetamine in the Dayton, Ohio area.

7. On May 22, 2017, a RANGETF confidential informant (hereinafter referred to as CI) made a recorded telephone call to MOORE at cellular telephone number **937-266-6189** to purchase a quantity of methamphetamine. On that same day, an undercover officer and the CI met MOORE at a predetermined location in Dayton, Ohio.

3

8. The methamphetamine transaction between MOORE, the CI, and the undercover officer at the predetermined location was surveilled by your Affiant and other law enforcement personnel. MOORE arrived driving a white Volvo S80 bearing Ohio temporary registration E218226.

9. Following the transaction, your Affiant met the undercover officer and CI at a predetermined meeting location. The undercover officer and CI reported that MOORE handed the undercover officer a bag containing methamphetamine in exchange for the buys funds. Based on my training and experience, the substance had the appearance and characteristics of methamphetamine. The substance was submitted to the Miami Valley Regional Crime Laboratory (MVRCL) for analysis. Your Affiant later received lab results from the MVRCL indicating the following: the plastic bag containing an off-white crystalline substance was found to be methamphetamine (Schedule II) have a net weight of 13.58 grams.

10. On May 30, 2017, the aforementioned RANGETF CI made a recorded telephone call to MOORE at cellular telephone number **937-266-6189** to purchase a quantity of methamphetamine. On that same day an undercover officer and the CI met MOORE at a predetermined location in Dayton, Ohio.

11. The methamphetamine transaction between MOORE, the CI, and the undercover officer at the predetermined location was surveilled by your Affiant and other law enforcement personnel. MOORE exited the residence of 2044 Kensington Avenue Dayton, Ohio and engaged in the methamphetamine transaction with the CI and undercover officer.

12. Following the transaction, your Affiant met the undercover officer and CI at a predetermined meeting location. The undercover officer and CI reported that MOORE handed the CI a bag containing methamphetamine in exchange for the buys funds. Based on my training and experience, the substance had the appearance and characteristics of methamphetamine. The

4

substance was submitted to the MVRCL for analysis. Your Affiant later received lab results from the MVRCL indicating the following: the plastic bag containing an off-white crystalline substance was found to be methamphetamine (Schedule II) have a net weight of 13.84 grams.

13. On June 21, 2017, your Affiant subpoenaed provider and subscriber information for cellular telephone number **937-266-6189.** The provider for cellular telephone number **937-266-6189** was identified as AT&T. AT&T reported that cellular telephone number **937-266-6189** was active. Cellular telephone number **937-266-6189** was identified as a Tracefone with no subscriber information listed. Your Affiant knows through training and experience that drug dealers commonly utilize Tracefone cellular telephones to conceal their identity from law enforcement. AT&T records identified the International Mobile Subscriber Identity (IMSI) number associated with the account as 310410680907558.

14. On June 23, 2017, the aforementioned RANGETF CI made a recorded telephone call to MOORE at cellular telephone number **937-266-6189** to purchase a quantity of methamphetamine. On that same day an undercover officer and the CI met MOORE at a predetermined location in Dayton, Ohio.

15. The methamphetamine transaction between MOORE, the CI, and undercover officer at the predetermined location was surveilled by your Affiant and other law enforcement personnel. MOORE exited the residence of 2044 Kensington Avenue Dayton, Ohio and engaged in the methamphetamine transaction with the undercover officer and CI.

16. Following the transaction, your Affiant met the undercover officer and CI at a predetermined meeting location. The undercover officer and CI reported that MOORE handed the undercover officer a bag containing methamphetamine in exchange for the buys funds. Based on my training and experience, the substance had the appearance and characteristics of

methamphetamine. The substance was submitted to the MVRCL for analysis. Your Affiant later received lab results from the MVRCL indicating the following: the plastic bag containing an off-white crystalline substance was found to be methamphetamine (Schedule II) have a net weight of 14.06 grams.

17. On June 29, 2017, the aforementioned RANGETF CI made a recorded telephone call to MOORE at cellular telephone number **937-266-6189** to purchase a quantity of methamphetamine. Law enforcement members surveilled MOORE when the CI placed the recorded telephone call to cellular telephone number **937-266-6189**. MOORE was observed answering and talking on a cellular telephone at the same time the CI placed the recorded call to cellular telephone number **937-266-6189.** On that same day an undercover officer and the CI met MOORE at a predetermined location in Dayton, Ohio.

18. The methamphetamine transaction between MOORE, the CI, and the undercover officer at the predetermined location was surveilled by your Affiant and other law enforcement personnel. MOORE arrived driving a white Volvo S80 bearing Ohio registration HDE2181.

19. Following the transaction, your Affiant met the undercover officer and CI at a predetermined meeting location. The undercover officer and CI reported that MOORE handed the undercover officer a bag containing methamphetamine in exchange for the buys funds. Based on my training and experience, the substance had the appearance and characteristics of methamphetamine. The substance was submitted to the MVRCL for analysis. Your Affiant later received lab results from the MVRCL indicating the following: the plastic bag containing an off-white crystalline substance was found to be methamphetamine (Schedule II) have a net weight of 13.95 grams.

20. As discussed in paragraphs 6 through 19 above, your Affiant and other law enforcement members have utilized the CI to make four controlled purchases of methamphetamine from MOORE at cellular telephone number **937-266-6189**. Your Affiant knows that collecting location information on the **Target Telephone** for a 30-day period will assist investigators to identify potential locations, associates, co-conspirators, and stash houses related to MOORE'S drug trafficking activity.

21. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

22. Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the **Target Telephone**, by initiating a signal to determine the

7

location of the **Target Telephone** on AT&T's network or with such other reference points as may be reasonably available.

23. Based on my training and experience, I know that AT&T can collect cell site data about **Target Telephone.**

## AUTHORIZATION REQUEST

24. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

25. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Telephone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

26. I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of

AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the **Target Telephone** on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

27. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Telephone** outside of daytime hours.

28. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_Frederick D. Zollers TFO_
Frederick D. Zollers
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on this 18th day of July, 2017.

SHARON L. OVINGTON
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **937-266-6189** and International Mobile Subscriber Identity (IMSI) number 310410680907558, (the "**Target Telephone**"), whose wireless service provider is AT&T, a wireless telephone service provider headquartered at 208 S. Akard Street, Dallas, Texas 75202.

2. Information about the location of the **Target Telephone** that is within the possession, custody, or control of AT&T including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the **Target Telephone** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **Target Telephone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the **Target Telephone** on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).